Present: Carrico, C.J., Compton[1], Lacy, Hassell, Keenan, and
         Kinser, JJ., and Poff, Senior Justice

JAN PAUL FRUITERMAN, M.D.
AND ASSOCIATES, P.C.
                                          OPINION BY
v.  Record No. 990376        SENIOR JUSTICE RICHARD H. POFF
                                        March 3, 2000
AHMAD WAZIRI AND HASSINI WAZIRI,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVES OF THE ESTATE OF
SYAWACH WAZIRI


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   M. Langhorne Keith, Judge

     In this appeal from a judgment entered in a medical

malpractice, wrongful death action, the appellant, Jan Paul

Fruiterman, M.D. and Associates, P.C., a professional

corporation (the P.C.), contends that the trial court erred in

denying coverage of the Virginia Birth-Related Neurological

Injury Compensation Act, Code § 38.2-5000 et seq. (the

Compensation Act), to professional corporations.

     Ahmad and Hassini Waziri, individually and as personal

representatives of the estate of their son, Syawach, filed an

amended motion for judgment entitled "Medical Malpractice-

Wrongful Death" against Dr. Fruiterman, individually, and

against the P.C.  Applying the rights and remedies defined in

the Compensation Act, the trial court sustained Dr. Fruiterman's

---

[1] Justice Compton participated in the hearing and decision
of this case prior to the effective date of his retirement on
February 2, 2000.

demurrer.  The court denied the co-defendant's demurrer on the ground that the rights and remedies of the Compensation Act do not apply to professional corporations.  The jury returned a verdict against the P.C. for $750,000 which the court reduced by remittitur to $730,000.

The sufficiency of the evidence of medical malpractice and proximate cause are not in issue on appeal.  Expert witnesses called by the plaintiffs testified that Dr. Fruiterman's performance of the fetal delivery by Caesarian section was conducted too late to avoid severe brain damage.  In response to medical opinion, the parents agreed to suspend life support systems, and Syawach, their first-born child, died eight days after birth.

The General Assembly enacted Chapter 50 of the Code of Virginia, the Compensation Act, in 1987.  That act "established the Virginia Birth-Related Neurological Injury Compensation Program."  § 38.2-5002(A).  The act provided that, subject to two exceptions[2], "the rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, his

_____

[2] The Compensation Act expressly provides that "a civil action . . . shall not be foreclosed against a nonparticipating physician or hospital", § 38.2-5002(D), or "against a physician or hospital where there is clear and convincing evidence that such physician or hospital intentionally or willfully caused or

personal representative, parents, dependents or next of kin, at common law or otherwise arising out of or related to a medical malpractice claim with respect to such injury." Id.

The Compensation Act established an "Injury Compensation Fund to finance the . . . Compensation Program." § 38.2-5015. To capitalize that fund, the Compensation Act provided that "[a] physician who otherwise qualifies . . . may become a participating physician in the Program . . . by paying an annual participating physician assessment to the Program in the amount of $5,000", § 38.2-5020(A), and that "a participating hospital with a residency training program . . . may pay an annual participating physician assessment to the Program for residency positions," § 38.2-5020(B). To administer the Compensation Program, "[t]he Virginia Workers' Compensation Commission [was] authorized to hear and pass upon all claims filed pursuant to this chapter", § 38.2-5003, and to "make an award providing compensation for . . . items relative to . . . [a covered] injury," § 38.2-5009.

I

The principal issue raised by the assignments of error is whether a professional corporation is entitled to the rights and benefits of the Compensation Act. The trial court ruled that it

intended to cause a birth-related neurological injury." § 38.2-5002(C).

3

was not.  The P.C. contends that the trial court misconstrued legislative intent.  We disagree with the P.C.

On brief, the P.C. acknowledges that the Compensation Act was intended to serve several interrelated purposes:

"Enacted in 1987 in direct response to the grossly lessening availability of medical malpractice insurance for obstetricians in the Commonwealth of Virginia, the Compensation Act was intended to assure affordable malpractice insurance and therefore a sufficient pool of obstetricians practicing throughout the Commonwealth."

The legislative intent is reflected in the legislative history recorded by legislators in the reports of subcommittees of the two Houses of the General Assembly.  See Senate Document No. 11 (1987); House Joint Resolution No. 297 (1989); House Document No. 63 (1990); House Joint Resolution No. 641 (1997).  See also King v. Neurological Injury Comp. Program, 242 Va. 404, 409-10, 410 S.E.2d 656, 660 (1991) (rejecting constitutional challenge to Compensation Act).

As we have said, the Compensation Act provides that "the rights and remedies herein granted to an infant . . . shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents or next of kin, at common law . . . ."  § 38.2-5002(B).  "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express

4

terms."  Schwartz v. Brownlee, 253 Va. 159, 166, 482 S.E.2d 827, 831 (1997) (citation omitted).

The Compensation Act begins with expressly restrictive definitions.  A "[p]articipating physician" is "a physician licensed in Virginia to practice medicine, who practices obstetrics or performs obstetrical services", § 38.2-5001, and "a licensed nurse-midwife who performs obstetrical services", id., and pays "an annual participating physician assessment to the Program", § 38.2-5020(A).

"'Participating Hospital' means a hospital . . . which . . . had in force an agreement with the Commissioner of Health . . . to participate in . . . a program to provide obstetrical care to patients eligible for Medical Assistance Services and to patients who are indigent, and . . . had in force an agreement . . . whereby the hospital agreed to submit to review of its obstetrical service . . . and  . . . had paid the participating assessment pursuant to § 38.2-5020 . . . ."

"Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."  Barr v. Town and Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)(quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).

5

Clearly, the General Assembly did not intend to immunize all health-care providers from tort liability for birth-related neurological injury caused by medical malpractice. The legislature expressly identified those entitled to that immunity as "participating physicians" and "participating hospitals"; then expressly defined "physicians" as obstetricians and nurse-midwives who perform obstetrical services; and then expressly specified that the term "participating" includes payment of an annual assessment by qualified physicians and hospitals to finance the costs of the benefits provided by the Compensation Program. No such assessment was imposed upon a professional corporation.

In summary, the Compensation Act expressly limits those entitled to its rights and benefits to selected health-care providers and expressly excludes "a nonparticipating physician or hospital." § 38.2-5002(D). The legislative omission of other health-care providers serving during the course of child birth, such as pediatricians, radiologists, and medical partnerships, confirms our conclusion that participating physicians and hospitals were intended to be the only health-care providers afforded immunity from civil liability by the Compensation Act. A professional corporation, the employer of a participating physician, is conspicuous by its absence.

II

6

In support of a second assignment of error, the P.C. contends that "[t]he award for non-economic loss bears no reasonable relation to the evidence and therefore is excessive." The P.C. is referring to the jury's award of $655,973.46, a sum in addition to its award for expenses incurred in "the care, treatment and hospitalization of the decedent".

The wrongful death statute, § 8.01-52, provides that "[t]he jury or the court . . . may award such damages as to it may seem fair and just" and that "[t]he verdict or judgment . . . shall include, but may not be limited to, damages for . . . [s]orrow, mental anguish, and solace . . . ."

We find the evidence of sorrow, mental anguish, and solace contained in this record fully sufficient to support the jury's award, and finding no merit in the assignments of error, we will affirm the judgment entered by the trial court.

Affirmed.