COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


IN RE KYLE WADE MEADOR,
 INFANT COMPLAINANT BY GUARDIAN AND NEXT FRIEND
 OF KYLE WADE MEADOR, HIS PARENTS TERRI JEAN AND
 HALSEY MEADOR, GEORGE MAXYMIV, M.D.,
 MARK W. GUSTAFSON, M.D., JANE DOE, R.N. OR L.P.N.,
 LEWIS-GALE CLINIC, L.L.C. AND LEWIS-GALE CLINIC, INC.

                                                       OPINION BY
   v.        Record No. 0227-04-3          JUDGE D. ARTHUR KELSEY
                                                       OCTOBER 26, 2004

VIRGINIA BIRTH-RELATED NEUROLOGICAL
 INJURY COMPENSATION PROGRAM


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          John T. Jessee, Joseph M. Rainsbury, Bettina Altizer (Flippin,
          Densmore, Morse & Jessee; Altizer & Altizer, on briefs), for
          appellants.

          Scott J. Golightly (Hirschler Fleischer, on brief), for appellee.


     This appeal presents the question of whether the Virginia Birth-Related Neurological

Injury Compensation Act, Code §§ 38.2-5000 to 38.2-5021 — which provides statutory

compensation to claimants and tort immunity to malpractice defendants for certain birth-related

injuries — applies to the unique circumstances of this case. The Workers' Compensation

Commission held the Act does not apply. We agree and affirm.

                                                  I.

     While at home on June 27, 2000, Terri Meador fell and began experiencing cramping.

About six months pregnant at the time, she visited her obstetrician, Dr. Gustafson, for an office

visit. Dr. Gustafson treated her and released her to return home that afternoon. At around

1:00 a.m. the following morning, she gave birth to a son, Kyle, at home alone. Born with a

gestational age of only 23 weeks, Kyle had a low heart rate and apnea. EMS technicians rushed the newborn to the hospital, where he was intubated and transferred to the neonatal intensive care unit. Later, Kyle developed seizures and suffered from severe respiratory distress syndrome.

Kyle's parents filed a motion for judgment in the Circuit Court for the City of Salem against George Maxymiv, M.D., Mark W. Gustafson, M.D., Jane Doe, R.N. or L.P.N., and the Lewis-Gale Clinic, alleging the defendants committed medical malpractice by failing to properly examine, treat, and diagnose Kyle and his mother. The defendants responded to the suit by claiming tort immunity under Code § 38.2-5002(B) of the Virginia Birth-Related Neurological Injury Compensation Act and by moving to refer the claim to the Workers' Compensation Commission for a determination of the Act's applicability. The trial court granted the reference and sent the case to the commission over the claimants' objection.

Before the commission, the claimants agreed to abandon their tort suit in exchange for statutory compensation. Together with the malpractice defendants, the claimants argued in favor of the statute's applicability to this case. Represented by the Attorney General, the Virginia Birth-Related Neurological Injury Compensation Program defended the claim and asserted that the statute was inapplicable because Kyle's birth did not occur in a participating hospital, nor did a participating physician perform obstetrical services at his birth. The Chief Deputy Commissioner agreed and dismissed the claim. On review, the full commission unanimously affirmed the dismissal — in effect remanding the case back to the trial court for continued prosecution, if the claimants so desired, of the tort suit against the malpractice defendants.

II.

On appeal, both the claimants and the malpractice defendants contend the commission misinterpreted the Act. Their argument raises a pure question of statutory construction, which we consider *de novo*. See Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707, 601

- 2 -

S.E.2d 667, 675 (2004) (recognizing that, under Virginia law, "pure statutory interpretation is the prerogative of the judiciary").

As we recently explained, the Virginia Birth-Related Neurological Injury Compensation Act "provides claimants with a no-fault remedy for compensation for qualified injuries." Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 271, 590 S.E.2d 631, 635 (2004) (citing Code § 38.2-5009). When the Act applies, its award of statutory compensation serves as the "sole remedy for infants who have incurred a birth-related neurological injury caused by a 'participating physician' or a 'participating hospital,' and bars infants who have sustained injuries of this nature from maintaining a common law tort action against such a 'participating physician' or 'participating hospital.'" Id. (quoting Berner v. Mills, 265 Va. 408, 411, 579 S.E.2d 159, 160 (2003)).

The Act cannot be applied with any interpretative preset in favor of coverage, for to do so would undermine two important features of the Act. First, the statute's

> finely engineered *quid pro quo* . . . does not uniformly favor claimants or potential tort defendants. In cases where malpractice litigation appears ill advised, a claimant may seek the application of the Act to his claim to obtain benefits from the statutory compensation fund. See Code §§ 38.2-5009, 38.2-5015(A). But in cases where litigation may be more promising, a claimant may seek to *defeat* the application of the Act to his claim.

Whitfield, 42 Va. App. at 271, 590 S.E.2d at 635 (emphasis in original). Our prior cases involve examples of both types,[1] and our interpretation of the statute cannot depend on who is on which side of the issue.

---

[1] In Whitfield, the claimants sought to defeat the Act's application (preferring instead their tort remedies) while the defendants argued in favor of the Act's coverage (seeking its statutory immunity from tort liability). Other cases involve the opposite scenario. See, e.g., Wolfe v. Va. Birth-Related Neuro. Injury Comp. Program, 40 Va. App. 565, 580, 580 S.E.2d 467, 474 (2003); Kidder v. Va. Birth-Related Neuro. Injury Comp. Program, 37 Va. App. 764, 778, 560 S.E.2d 907, 913 (2002); Coffey v. Va. Birth-Related Neuro. Injury Comp. Program, 37

Second, when statutes displace common law principles governing tort liability, the statutes should be "strictly construed" and not "be enlarged in their operation by construction beyond their express terms." Jan Paul Fruiterman, M.D. & Assocs., P.C. v. Waziri, 259 Va. 540, 544, 525 S.E.2d 552, 554 (2000) (quoting Schwartz v. Brownlee, 253 Va. 159, 166, 482 S.E.2d 827, 831 (1997)); see also Newman v. Newman, 42 Va. App. 557, 566, 593 S.E.2d 533, 538 (2004) (*en banc*) ("Absent a clearly expressed legislative intent otherwise, statutes should not be construed to displace long-established common law principles.").[2]

Guided by these general principles, we "begin, as always, with the language of the statute." Whitfield, 42 Va. App. at 276, 590 S.E.2d at 638 (citing Duncan v. Walker, 533 U.S. 167, 172 (2001)). Working from the statutory text, "we strive to give that language a 'literal construction' unless doing so 'would involve a manifest absurdity.'" Id. (quoting Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003)). And, by literal, we mean the statutory words "should be given their 'common, ordinary and accepted'" understanding. Mouberry v. Commonwealth, 39 Va. App. 576, 583, 575 S.E.2d 567, 570 (2003) (quoting Germek v. Germek, 34 Va. App. 1, 8, 537 S.E.2d 596, 600 (2000)).

For compensation to be awarded under the Birth-Related Neurological Injury Compensation Act, the commission must first find that the infant sustained a "birth-related neurological injury" as defined by Code § 38.2-5001. See Code §§ 38.2-5008(A)(1),

---

Va. App. 390, 401-02, 558 S.E.2d 563, 569 (2002); Va. Birth-Related Neuro. Injury Comp. Program v. Young, 34 Va. App. 306, 318, 541 S.E.2d 298, 304 (2001).

[2] The claimants argue "it is particularly inappropriate" for the Fruiterman principle to apply to their case because in Fruiterman "it was the health care provider, *not* the infant, who sought to invoke the Act," whereas here "the *injured infant* himself is requesting relief under the statute." Appellants' Brief at 20 n.7 (emphasis in original). Under this view, the Act would apply in cases where the claimants consider the statutory *quid pro quo* to be an acceptable bargain — but not in cases where they reach an opposite conclusion and seek to hold on to their common law remedies. Suffice it to say, our commitment to the objective application of neutral principles of law precludes us from adopting this *ad hoc* method of statutory construction.

38.2-5009(A)(i). But that finding, standing alone, does not mean the Act applies. The commission must also find either "that obstetrical services were delivered by a participating physician at the birth or that the birth occurred in a participating hospital." Code § 38.2-5009(A)(ii). If neither condition is met, the Act requires the commission to dismiss the claim for compensation:

> If the Commission determines (i) that the injury alleged is not a birth-related neurological injury as defined in § 38.2-5001, or (ii) that obstetrical services were not delivered by a participating physician at the birth and that the birth did not occur in a participating hospital, it *shall dismiss the petition* and cause a copy of its order of dismissal to be sent immediately to the parties by registered or certified mail.

Code § 38.2-5008(A)(5) (emphasis added).

In this case, Kyle was born at home without the aid of a physician. Because of that fact, the commission held that no obstetrical services were delivered "by a participating physician at the birth" and the "birth did not occur in a participating hospital." Id. The claimants point out, however, that this ruling assumes the word "birth" to be essentially synonymous with "delivery." And, if the legislature intended the word to mean that, it would have said so directly. Thus, the claimants conclude, the word "birth" should be construed to mean the entire "course of labor, delivery or resuscitation" — the phrase used by the legislature to define the boundaries of a "birth-related" neurological injury in Code § 38.2-5001, the Act's definitional section.

The Birth-Related Neurological Injury Compensation Program advances a similar argument in the opposite direction, pointing out that if the legislature wanted the word "birth" to mean the entire "course of labor, delivery or resuscitation," it would have used that precise phrase. Creating symmetry between "birth-related" in § 38.2-5001 and "birth" in § 38.2-5008(A)(5)(ii), the Program argues, would require nothing short of a judicial amendment to the statute.

To the extent these opposite constructions of the statute can be viewed in rough equipoise, the interpretative tiebreaker comes from the Virginia Supreme Court's reminder in Fruiterman that this statute is in "derogation of common law" and thus its terms must be "strictly construed" to avoid unintended reach of either the compensation remedy or its accompanying tort immunity. Jan Paul Fruiterman, M.D. & Assocs., P.C., 259 Va. at 544, 525 S.E.2d at 554. From this perspective, the term "birth" cannot be enlarged to cover premature labor experienced by a mother months before her expected due date. Nor can the term "birth" be expanded to include the efforts of hospital staff members to resuscitate a child who was born at home.

In ordinary speech, "birth" usually denotes the "complete extrusion of a newborn baby from the mother's body," Black's Law Dictionary 179 (8th ed. 2004), thus explaining expressions like birthday and birth weight. The General Assembly employed a similar meaning in Code § 32.1-249(6), defining "live birth" for purposes of issuing birth certificates as the "complete or substantial expulsion or extraction from its mother" of a live child. To be sure, it was just this denotation that Dr. Gustafson (one of the malpractice defendants) used when describing what happened in this case. As he put it, Kyle's mother was admitted to the hospital "after the birth of her son." Kyle arrived in the emergency room, Dr. Gustafson noted, "thirty minutes after his birth." The independent physician panel reviewing this case likewise used the term this way, stating that Kyle was "born unexpectedly and precipitously at home" and arrived at the hospital after his "birth." Though none of these doctors intended to offer advice on statutory interpretation, they did nonetheless — for their use of the term provides telling examples of its "common, ordinary and accepted" meaning. Mouberry, 39 Va. App. at 583, 575 S.E.2d at 570 (citation and internal quotation marks omitted).

We also find support for this interpretation embedded in the claimants' argument to the contrary. By seeking to equate "course of labor, delivery or resuscitation" in § 38.2-5001 with

- 6 -

"birth" in § 38.2-5008(A)(5)(ii), the claimants overlook the specific concept being defined in the earlier definitional provision. Section 38.2-5001 defines a "birth-related" neurological injury. The hyphenated modifier has a broadening effect. A son is related to his father, but the paternal relationship does not make both son and father the same person. They are different, but related. Here too, the expression "birth-related" neurological injury in § 38.2-5001 addresses a concept related to — but not identical with — "birth" in § 38.2-5008(A)(5)(ii).

### III.

The commission properly interpreted the Birth-Related Neurological Injury Compensation Act and found it inapplicable to the unique circumstances of this case. We thus affirm the dismissal of the claim for statutory benefits.

Affirmed.