COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Haley
Argued in Richmond, Virginia

VIRGINIA EMPLOYMENT COMMISSION

OPINION BY
v.        Record No. 1216-10-1                                JUDGE D. ARTHUR KELSEY
                                                              FEBRUARY 15, 2011

COMMUNITY ALTERNATIVES, INC.
   AND APRIL L. COLLIER

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Cheryl A. Wilkerson, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

J. Nelson Wilkinson (David C. Burton; Williams Mullen, P.C., on
brief), for appellee Community Alternatives, Inc.

No brief or argument for appellee April L. Collier.

Community Alternatives, Inc., fired April L. Collier for violating its drug-free workplace

policy after she tested positive on a drug test.  The Virginia Employment Commission (VEC)

awarded Collier unemployment benefits.  The circuit court reversed the award after concluding

the VEC misapplied Code § 60.2-618(2)(b)(1), which precludes employees fired for testing

positive for drug use from receiving unemployment benefits.  Agreeing with the circuit court's

reasoning, we affirm.

I.

In August 2007, Collier began working for Community Alternatives, Inc.  The employer

maintained a drug-free workplace policy and required employees to submit to random drug

screening.  Collier signed the policy, verifying:  "I understand procedures for testing and

reviewing of results are conducted in accordance with recognized standards of the National

Institute of Drug Administration."  App. at 14.  Randomly selected for a drug test, Collier tested

positive for marijuana use in September 2008.

The Sentara Medical Group collected the sample and forwarded it to Quest Diagnostics. Quest Diagnostics issued a report identifying the specimen tested, the test results, the date and time the sample was collected, received, and reported, and the "Certifying Scientist" who verified the results. The report also confirmed the specimen was received by Quest Diagnostics and processed in its "DHHS" certified lab. DHHS is an acronym for the United States Department of Health and Human Services.

Based on the drug test results, the employer fired Collier for violating the drug-free workplace policy. Collier filed a claim with the VEC seeking unemployment benefits. In response, the employer argued Collier was ineligible for benefits under Code § 60.2-618(2)(b)(1) because she had been fired for misconduct. A VEC deputy claims examiner awarded benefits. The employer sought review by a VEC appeals examiner.

During the telephone conference hearing, the VEC appeals examiner asked for a chain-of-custody affirmation — which she explained as the "form the Claimant would sign-off on before giving her specimen to whoever's conducting . . . taking the specimen." App. at 172. The employer's representative replied, "I can try to find that and . . . fax it to you if you want me to." Id. The appeals examiner answered, "[i]f you do have it in her file, I would like for you to fax it please . . . ." Id. The employer's representative telefaxed the separate chain-of-custody affirmation to the VEC about an hour after the evidentiary hearing. Collier did not participate in the proceeding. Nor did she file any later statements contesting the authenticity of the chain-of-custody form or her signature on it. The VEC appeals examiner reversed the award.

Collier then requested a full VEC review of her claim. Acting with delegated power from the full VEC, a "special examiner" reversed the appeals examiner and reinstated the award. The special examiner refused to consider the employer's chain-of-custody affirmation because the telefax was received after the telephonic hearing. Because the appeals examiner did not

expressly "hold open the record," the special examiner concluded, the VEC would not treat the chain-of-custody affirmation as an exhibit. The VEC special examiner then held the drug test was "insufficient" as a matter of law to establish a statutory *prima facie* case of misconduct because the test was not accompanied by a separate chain-of-custody affirmation. App. at 10. The VEC reached this conclusion even though Collier never challenged the chain of custody for her test specimen.

The employer appealed to the circuit court arguing that neither the statute nor the VEC administrative regulations required a separate chain-of-custody affirmation. The employer's Petition for Judicial Review also pointed out that "Collier never challenged the chain of custody of her test specimen." App. at 3. The VEC expressly admitted this fact in its Answer to Petition for Judicial Review. See Tr. Ct. R. at 24.[1] In a commendable abundance of judicial caution, the circuit court nonetheless remanded the case to the VEC to clarify whether it rejected the drug test as factually unreliable given the specific circumstances of this case or as insufficient as a matter of law to constitute a statutory *prima facie* showing of misconduct. See App. at 33-39.

On remand, the VEC restated its view that the statute required an employer in all cases (even cases in which no one contests the reliability of the drug test) to file a chain-of-custody affirmation in order to establish a *prima facie* showing of misconduct. The failure to do so, the VEC believed, was a fatal omission in any misconduct case based upon a positive drug test. In a detailed and thorough letter opinion, the circuit court reversed the VEC's decision as inconsistent with Code § 60.2-618(2)(b)(1). The VEC appeals to us, asserting the circuit court erred in doing so.

_____

[1] This factual concession constituted a binding judicial admission, conclusively establishing an unchallenged chain of custody. See generally Jones v. Ford Motor Co., 263 Va. 237, 254, 559 S.E.2d 592, 600 (2002) (citing General Motors Corp. v. Lupica, 237 Va. 516, 520, 379 S.E.2d 311, 314 (1989)).

II.

Under the Unemployment Benefits Act, "[t]he legislature intended unemployment benefits to be paid only to those who find themselves unemployed 'without fault on their part.'" Va. Emp't Comm'n v. Trent, 55 Va. App. 560, 568, 687 S.E.2d 99, 103 (2010) (quoting Israel v. Va. Emp't Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988)). "Furthering this policy goal, Code § 60.2-618(2)(a) prohibits benefits 'if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.'" Id.

Code § 60.2-618(2)(b) provides examples of disqualifying misconduct. By statute, misconduct includes, but is not limited to:

> An employee's confirmed positive test for a nonprescribed controlled substance, identified as such in Chapter 34 (§ 54.1-3400 et seq.) of Title 54.1, where such test was conducted at the direction of his employer in conjunction with the employer's administration and enforcement of a known workplace drug policy. Such test shall have been performed, and a sample collected, in accordance with scientifically recognized standards by a laboratory accredited by the United States Department of Health and Human Services, or the College of American Pathology, or the American Association for Clinical Chemistry, or the equivalent, or shall have been a United States Department of Transportation [DOT]-qualified drug screen conducted in accordance with the employer's bona fide drug policy. The Commission may consider evidence of mitigating circumstances in determining whether misconduct occurred.

Code § 60.2-618(2)(b)(1) (added to Code § 60.2-618 by 1998 Va. Acts ch. 241 and 2008 Va. Acts ch. 719). Subsection 2(b)(1) breaks down into a simple premise: An employer makes a *prima facie* showing of misconduct by presenting a "confirmed positive test" that satisfies three requirements:

- the test was conducted pursuant to a "known workplace drug policy,"

- the testing and sampling were performed "in accordance with scientifically recognized standards," and

▪ the testing lab was "accredited" or the test was a DOT qualified drug screen.

Id.[2] Once the employer presents a *prima facie* case, the burden shifts to the claimant to present "mitigating circumstances" which the VEC may consider "in determining whether misconduct occurred." Id.

The question we must answer is whether this statute expressly or implicitly requires the employer to present a separate chain-of-custody affirmation to establish a *prima facie* case of misconduct. Our analysis should begin, "as always, with the language of the statute." Meador v. Va. Birth-Related Neurological Injury Comp. Program, 44 Va. App. 149, 153-54, 604 S.E.2d 88, 90 (2004) (citation omitted). Working from the statutory text, "we strive to give that language a 'literal construction' unless doing so 'would involve a manifest absurdity.'" Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 276, 590 S.E.2d 631, 638 (2004) (citation omitted); see also Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010) (restating "manifest absurdity" caveat). "[B]y literal, we mean the words should be given their common, ordinary and accepted understanding." Meador, 44 Va. App. at 154, 604 S.E.2d at 91 (citation and internal quotation marks omitted). This textualist approach presumes "the legislature 'chose, with care,' the specific words of the statute." Kane v. Szymczak, 41 Va. App. 365, 371, 585 S.E.2d 349, 352-53 (2003) (citations omitted).

The text of Code § 60.2-618(2)(b)(1) nowhere states the drug test results are *per se* invalid without a separate chain-of-custody affirmation. Instead, subsection (2)(b)(1) merely

_____

[2] Proof of a positive drug test, however, is not the sole means of proving disqualifying misconduct based on drug use. See, e.g., Barkley v. Peninsula Transp. Dist. Comm'n, 11 Va. App. 317, 320, 398 S.E.2d 94, 95 (1990) (holding the employee's admitted drug use two days prior to her next scheduled work week sufficient even though the employer "never introduced evidence of the drug test results or evidence regarding the chain of custody of [the employee's] test specimen").

requires the test be performed, and the sample collected, in accordance with "scientifically recognized standards." Conspicuously absent from subsection (2)(b)(1) is any freestanding statutory requirement that the drug test be accompanied by a separate chain-of-custody affirmation. Nor can the putative requirement be implied from the procedural guidelines governing VEC evidentiary hearings. By statute, they "need not conform to common law or statutory rules of evidence and other technical rules of procedure." Code § 60.2-623(A); see also 16 Va. Admin. Code §§ 5-80-20(F), 5-80-30(D).[3]

It is not as if the General Assembly has never addressed the chain-of-custody concept in the context of scientific testing. Code § 19.2-187.01, for example, considers certificates of analysis issued by the "Division of Consolidated Laboratory Services, the Department of Forensic Science or any of its regional laboratories, or by any laboratory authorized by such Division or Department, . . . [as] prima facie evidence that the person receiving the material was an authorized agent and that such receipt constitutes proper receipt by the laboratory for purposes of this section." Code § 19.2-327.1(A) addresses the "chain of custody" showing necessary for a felon seeking a new post-conviction scientific investigation of any human biological evidence. Code § 20-49.3 states the "documentary evidence of the chain of custody" essential for admission of genetic tests in parentage proceedings. That the General Assembly has specifically addressed the chain-of-custody concept on several occasions, but did not do so here, implies a specific legislative choice.

In response, the VEC contends that even though "Code § 60.2-618(2)(b)(1) does not mention 'chain of custody' by name," it can be implied from the statutory requirement that the testing and sample collection be performed pursuant to "scientifically recognized standards."

---

[3] Accord Snyder v. Va. Emp't Comm'n, 23 Va. App. 484, 487, 477 S.E.2d 785, 786-87 (1996); Baker v. Babcock & Wilcox Co., 11 Va. App. 419, 425-26, 399 S.E.2d 630, 634 (1990).

App. at 43-44.  We agree with the thread of reasoning underlying this argument but fail to see how it leads to the VEC's conclusion.

It stands to reason that "scientifically recognized standards" — if truly scientific and well recognized — would seek to ensure the sample collected for testing is in fact the sample actually tested.  See, e.g., DHHS's Mandatory Guidelines for Federal Workplace Drug Testing Programs, 69 Fed. Reg. 19644 (April 13, 2004) (requiring testers to ensure the sample's chain of custody) (later revisions summarized at 75 Fed. Reg. 22809 (April 30, 2010)).  That truism, however, does not mean an accredited laboratory cannot provide certified test results without separately verifying this assertion.  If we were to infer anything, it would be that an accredited laboratory would not certify its findings if they did *not* rest upon a secure chain-of-custody foundation.  The absence of a separate document in addition to the certified lab results does not necessarily imply the lab failed to follow proper chain of custody protocols.

However one parses the statutory language, the VEC concludes, it has consistently imposed a separate-document requirement affirming the chain of custody and, thus, we should defer to its interpretation of the statute.  We decline the invitation to do so.  While VEC factfinding receives the highest degree of appellate deference, Trent, 55 Va. App. at 567-68, 687 S.E.2d at 103, no such deference applies to questions of law.  "Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review."  Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted).  "This axiom stems from basic principles of separation of powers.  It is emphatically the province and duty of the judicial department to say what the law is."  Id. (citations and internal quotation marks omitted).  "Virginia courts do not delegate that task to executive agencies."  Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004).

The narrow nature of our holding, however, should not be overlooked. Like the circuit court, we reject only the VEC's broad view that a positive drug test can never constitute a *prima facie* case of misconduct under Code § 60.2-618(2)(b)(1) unless accompanied by a separate chain-of-custody affirmation. We hold only that a positive drug test, without any additional chain-of-custody affirmation, presents a *prima facie* case of misconduct if the test complies with Code § 60.2-618(2)(b)(1).

That said, we do not mean to invert the VEC's error by implying chain-of-custody affirmations can play no role in the decisionmaking process. In cases where, unlike here, the evidence calls into question the chain of custody of the sample tested, then the VEC — like any other factfinder — may consider the presence or absence of a separate chain-of-custody affirmation in determining the probative weight of the drug test. Our holding that such affirmations are not legally essential to a *prima facie* case of misconduct leaves untouched the factual relevance they may have in cases where the claimant specifically disputes the chain of custody.

### III.

Because the circuit court correctly interpreted Code § 60.2-618(2)(b)(1), we affirm.

<u>Affirmed.</u>