COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Athey and Senior Judge Humphreys
Argued at Lexington, Virginia


FRANK MARSHALL SMITH, II

OPINION BY
v.       Record No. 1722-24-3         JUDGE CLIFFORD L. ATHEY, JR.
                                       DECEMBER 2, 2025

GARY LARROWE


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

Thomas E. Strelka (L. Leigh Rhoads; Virginia Employment Law, on
brief), for appellant.

Johneal M. White (Glenn Robinson Cathey Skaff & White PLC, on
brief), for appellee.


On September 24, 2024, the Circuit Court of the City of Roanoke ("circuit court")

entered a final order sustaining both a demurrer and a plea in bar of immunity to Frank Marshall

Smith, II's ("Smith") complaint against Gary Larrowe ("Larrowe") in both his official and

individual capacity.  Larrowe is a board member of the Roanoke Valley Broadband Authority

("RVBA"), and Smith was employed by RVBA as president and CEO.  Smith's complaint

alleged that Larrowe tortiously interfered with Smith's employment contract with RVBA and

further engaged in unlawful retaliation against Smith under Virginia's Fraud and Abuse Whistle

Blower Protection Act ("FAWPA").  On appeal, Smith contends that the circuit court erred when

sustaining Larrowe's demurrer and plea in bar because his complaint sufficiently pleaded facts in

support of his claims and Larrowe was not immune from those claims under Code

§ 15.2-5431.36.  Finding that the circuit court did not err in determining that Larrowe was

immune from Smith's claims, we affirm the circuit court's judgment.

## I. BACKGROUND[1]

RVBA is a telecommunications partnership involving several local governments generally located within the southwestern region of Virginia. The local governments currently comprising RVBA include Botetourt County, Roanoke County, the City of Roanoke, and the City of Salem. RVBA is a political subdivision of the Commonwealth created pursuant to the Virginia Wireless Service Authorities Act[2] ("WSAA"), which provides broadband services to customers residing in the member localities. Larrowe is the County Administrator of Botetourt County. "[D]ue to his role as County Administrator, the lead executive employee of Botetourt County," he also served as a board member of RVBA. Smith was hired by the RVBA board to serve as RVBA's president and CEO.

In January of 2020, Smith and Larrowe became involved in a fee dispute over the "management fee" RVBA charged Botetourt County for the provision of broadband service. As documented by Smith, "Botetourt County had long ago elected to be a 'non-participating' municipality regarding annual membership to RVBA," meaning that the "County chose not to pay annual participation fees to RVBA as other municipalities had agreed." "Botetourt County had intended to seek reimbursement of all project-related management fees from the Commonwealth of Virginia," but "a state agency informed Botetourt County that it would not be reimbursed for the fee that had been rightfully assessed to Botetourt County by RVBA." The imposition of the management fee "angered . . . Larrowe."

---

[1] The circuit court dismissed the suit based solely on the pleadings. Accordingly, we presume the facts alleged in the complaint are true and grant Smith all reasonable inferences derived from those facts. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022). "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

[2] *See* Code § 15.2-5431.3.

Although that particular fee dispute was later resolved,[3] Larrowe remained angry at Smith and took "every opportunity to derogatorily criticize . . . Smith and RVBA leadership to other Board Members." Larrowe "seemingly felt politically burned by the affair and sought to wrongfully blame . . . Smith," "rehash[ing]" the fee dispute "many times." Over the course of two phone calls in the fall of 2021, Smith documented Larrowe making a series of statements to him, including:

- "You don't know what you're doing in broadband."

- Botetourt County "had not properly procured" RVBA's services for projects funded by government CARES Act funds.

- "I will make sure that RVBA will be dinged too if Botetourt County is going to get dinged."

- "If I go down, you go down."

- "I will implicate you in wrongdoing."

Larrowe also made comments concerning Smith's "character and reputation." For example, Larrowe falsely "stated to the Chair of the RVBA Board that . . . Smith had mismanaged CARES funds and lied to other members of the Board," in order "to harm . . . Smith." Additionally, Larrowe told a third-party contractor that Smith "mismanaged RVBA and did not utilize transparency" and falsely told the "Chairman of the RVBA Board that . . . Smith had broken FOIA laws and that . . . Smith had been intentionally misleading regarding a recent project." Furthermore, Larrowe "accused RVBA leadership (i.e., Mr. Smith) of 'stealing' funds from Botetourt County by issuing the management fee" during a "meeting of other" RVBA board members, and he falsely "stated to third parties throughout Southwest Virginia that RVBA's leadership had acted in a criminal fashion." Smith "expressed that he believed that . . . Larrowe was committing wrongdoing by using his public position to launch attacks."

---

[3] In June of 2022, RVBA and Botetourt County settled "the funding dispute that arose from the projects at issue."

Smith queried whether Larrowe's actions had violated the RVBA board's code of ethics, "report[ing] to the RVBA Board's attorney that he believed . . . Larrowe was retaliating against [him] for [his] legal actions as President of RVBA." While Smith acknowledged that "[a]s a Board Member, . . . Larrowe had a duty to serve Botetourt County's interests as a Member of the RVBA Board," in Smith's view, Larrowe's actions "were taken far beyond any line of reason or call of duty he may have possessed." It appeared to Smith as though "Larrowe may have been motivated to score political points by falsely and maliciously impugning others in a public fashion regardless of the truth of the matter."

Smith further noted that "[u]nder . . . Larrowe's direction, Botetourt County managed a website with content created by the County." "On or about April 24, 2023," a post purporting to dispel "an alleged rumor that an 'audit of Botetourt County budget uncovered over $210,000 of misappropriated funds for broadband'" was published on the website. The post stated, in relevant part:

> During the pandemic, Botetourt County requested the Roanoke Valley Broadband Authority (RVBA) to assist with the management of two state-funded broadband deployment projects. . . .
>
> The RVBA managed the two broadband deployment projects in Botetourt using state funds. At the end of the projects, the County conducted a review of the grant expenditures for both projects and identified some RVBA charges that required DHCD's determination of whether they were allowed. Some of the RVBA charges were disallowed by the Department of Housing and Community Development (DHCD). The County requested DHCD's review of the expenditures to ensure grant funding compliance.
>
> Botetourt County requested the return of the disallowed expenditures, which resulted in the RVBA and Botetourt County executing a settlement agreement to address the disallowed expenditures. Once the funds were returned to the county, the funds were returned to the Commonwealth. No local dollars were utilized for the involved projects.

The county was out ZERO dollars and did not misappropriate any funding, nor did this reimbursement to the state cost our county taxpayers any money. Read the settlement agreement by clicking here.

The Botetourt County Director of Economic Development subsequently notified Smith of the post, at the direction of Larrowe, to "antagonize" Smith, "ma[king] clear that the purpose of the post was aimed at harming" Smith. Smith characterized the post as an inaccurate portrayal of events that implied RVBA mismanagement and "omitted key facts."

Smith "repeatedly voiced his concerns to the RV[BA] Board and its attorneys that . . . Larrowe was harming him and acting in conflict with his duties to the Board." Smith also noted that after the RVBA management fee dispute with Botetourt County was resolved, Larrowe emailed the "RVBA Board and others," alleging that "the issues underlying the disputes between Botetourt County and RVBA would not have occurred 'if cooperation and transparency had been provided by the RVBA Staff leadership,'" i.e., Smith. (Emphasis omitted).

Shortly thereafter, due to what Smith characterized as an "intolerable" workplace environment, Smith voluntarily resigned from his position as president and CEO of RVBA. Smith then sued Larrowe.

In his complaint, Smith alleged that "Botetourt County, through the statements and actions of . . . Larrowe, consistently criticized RVBA." Smith also asserted that after he had "expressed his views on the receipt and expenditure of government funds by Botetourt County," Larrowe retaliated and "worked to oppose RVBA" and Smith.[4] Smith's complaint further alleged that Larrowe's actions stemmed from "malice and bad faith" and had "damaged" Smith's reputation and credibility. Smith asserted that "Larrowe, in his individual capacity and as an agent of Botetourt

---

[4] Smith further alleged that he had "expressed his views on matters of public concern— the receipt and expenditure of CARES Act funds—to the RVBA Board, a public body, and Botetourt County's seemingly unlawful and certainly unprofessional conduct."

County, acting within the scope of his employment," caused him "to suffer pecuniary losses, consequential damages, loss of professional reputation, enjoyment of life, mental anguish, and other compensatory damages." Smith's complaint also alleged that Larrowe had intentionally and tortiously interfered with Smith's contract with RVBA. Smith further asserted that Larrowe's retaliation violated the FAWPA.

In response, Larrowe filed a demurrer alleging that because Smith worked for Larrowe as a board member of RVBA, Larrowe could not, as a matter of law, interfere with his own contract. Larrowe also alleged that Smith's complaint failed to allege any conduct by Larrowe that would be considered improper interference. Larrowe further contended that Smith's complaint failed to plead any discharge, threat, or discrimination under the FAWPA or that Smith had reported the alleged wrongdoing. Larrowe also argued that Smith's voluntary resignation precluded relief for either claim. Lastly, Larrowe filed a plea in bar contending, in relevant part, that Code § 15.2-5431.36 "contains an absolute immunity clause" and that "Botetourt County is a member of the RVBA," and therefore, as "an officer of Botetourt County, and a person acting on behalf of Botetourt County as alleged in the Complaint, he cannot be subject to personal liability." Additionally, Larrowe argued that "[a]ny attempt to sue [him] in his official capacity is a suit against Botetourt County, and thus he is also immune in any official capacity." In response, Smith asserted that his complaint properly pleaded the elements of both claims and that Larrowe was not entitled to immunity under Code § 15.2-5431.36, as Larrowe was not "acting within the scope of [his] authority." (Alteration in original).

On September 9, 2024, the circuit court issued a letter opinion finding that Smith's complaint failed to properly plead claims of tortious interference with a contract or a violation of the

FAWPA.[5]  The circuit court also found that Smith's voluntary resignation precluded his claims.

Finally, the circuit court sustained Larrowe's plea of immunity, holding that Larrowe "cannot be

subject to personal liability and is immune in any official capacity."  Accordingly, the circuit court

sustained Larrowe's demurrers, granted the plea in bar, and dismissed Smith's suit.  On the circuit

court's amended final order, Smith noted his objection to the circuit court's ruling on the plea in bar

as "Defendant is not immune to Plaintiff's claims."  Smith appealed.

## II.  ANALYSIS

### A.  *Standard of Review*

"We apply a de novo standard of review when '[t]here are no disputed facts relevant to

the plea in bar and it presents a pure question of law.'"  *Smith v. McLaughlin*, 289 Va. 241, 251

(2015) (quoting *David White Crane Serv. v. Howell*, 282 Va. 323, 327 (2011)).  "[W]here no

evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review,

consider solely the pleadings in resolving the issue presented.  In doing so, the facts stated in the

plaintiff's [complaint] are deemed true."  *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va.

305, 312 (2022) (second alteration in original) (quoting *Massenburg v. City of Petersburg*, 298

Va. 212, 216 (2019)).  "Two important limitations on this principle, however, deserve

emphasis."  *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v.

Baker*, 299 Va. 628, 641 (2021)).  Although we grant the plaintiff any reasonable inferences

derived from the factual allegations in the complaint, "we give them no weight to the extent that

they are *unreasonable*.  The difference between the two turns on whether the inferences are

strained, forced, or contrary to reason."  *Id.* (quoting *Baker*, 299 Va. at 641).  We also "do not

---

[5] The circuit court held a hearing on the demurrer on August 26, 2024, but a transcript of that hearing is not in the record.

accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Id.* (quoting *Baker*, 299 Va. at 641).

B. *Larrowe is entitled to immunity pursuant to Code § 15.2-5431.36.*[6]

Smith contends that the circuit court erred in determining that Larrowe was immunized from his claims, as he asserts that Larrowe failed to demonstrate "all of the elements set out in Code § 15.2-5431.36" and, as a result, was not entitled to immunity at the plea-in-bar stage. We disagree.

RVBA is a public authority established under the WSAA. *See* Code § 15.2-5431.3 (authorizing the creation of an "authority" by "[t]he governing body of a locality . . . by resolution, or two or more localities . . . by concurrent resolutions" that "shall be a public body politic and corporate"). Per the WSAA,

> The powers of each authority created by the governing body of a
> locality shall be exercised by an authority board of five or seven
> members, or at the option of the board of supervisors of a county, a
> number of board members equal to the number of members of the
> board of supervisors.

Code § 15.2-5431.10(A). "The board members of an authority shall be selected in the manner and for the terms provided by the agreement or ordinance or resolution or concurrent ordinances or resolutions creating the authority." *Id.* And "[o]ne or more members of the governing body of a

_____

[6] In his plea in bar, Larrowe asserted that he was 1) immune from personal liability pursuant to Code § 15.2-5431.36 and 2) immune in his official capacity. Smith countered by contending that Larrowe was not immune under Code § 15.2-5431.36, but the circuit court agreed with Larrowe. Outside of Smith's general objection stated on the amended final order, there is no indication in the record that Smith argued that Larrowe was not immune in his official capacity or objected to the circuit court's ruling on that basis. And on appeal, Smith does not challenge the circuit court's ruling that Larrowe was immune in his official capacity. Hence, we do not address whether Larrowe was immune in his official capacity as County Administrator of Botetourt County and an RVBA board member, finding any arguments related to that issue waived. *See* Rule 5A:18; Rule 5A:20(c); Rule 5A:20(e).

locality may be appointed board members of the authority, the provisions of any other law to the contrary notwithstanding." *Id.* The WSAA further contains an immunity provision:

> No member of any authority or officer of any governing body of a locality creating such authority, or person or persons acting in their behalf, while acting within the scope of their authority shall be *subject to any personal liability* by reason of his carrying out of any of the powers expressly given in this chapter.

Code § 15.2-5431.36 (emphasis added) ("Liability of members or officers.").

Thus, we look to the "expressly given" powers set forth in the WSAA to determine what conduct is covered by the immunity provision. *Id.* An authority such as RVBA is expressly authorized to, inter alia, "[a]cquire, construct, reconstruct, improve, enlarge, operate or extend any project" and "[f]ix, charge and collect rates, fees and charges for the use of or for the services furnished by or for the benefit from any project operated by the authority." Code § 15.2-5431.11(6), (9). "Connection and service fees established by an authority shall be fair and reasonable. Such fees shall be reviewed by the authority periodically and shall be adjusted, if necessary, to assure that they continue to be fair and reasonable." Code § 15.2-5431.11(9). "The board members may appoint a chief administrative or executive officer who shall serve at the pleasure of the board members. He shall execute and enforce the orders and resolutions adopted by the board members and perform such duties as may be delegated to him by the board members." Code § 15.2-5431.10. Thus, no RVBA board member can be "subject to any personal liability" for "carrying out" these specifically enumerated powers, so long as they are "acting within the scope of their authority." Code § 15.2-5431.36. Importantly, the WSAA also provides that it "shall constitute full and complete authority for the doing of the acts herein authorized, and shall be liberally construed to effect the purposes of the chapter." Code § 15.2-5431.1.

Smith does not dispute that Code § 15.2-5431.36 provides RVBA board members immunity from personal liability "while acting within the scope of their authority." Instead, he contends that the complaint sufficiently pleaded that Larrowe acted "'outside the scope' of his position" while engaging in the alleged conduct, such that he was subject to suit in his individual capacity. We disagree.

The General Assembly, by statute, may provide immunity to government employees tasked with undertaking certain actions. *See Couplin v. Payne*, 270 Va. 129, 135 (2005) (analyzing the specific immunity provided to Metropolitan Washington Airport Authority employees through Code § 5.1-173 for conduct involved in proprietary functions, but not for torts committed during the performance of governmental functions). To the extent that such statutory immunity differs from that of common-law sovereign immunity, its codification "is in derogation of the common law." *Id.* at 136; *cf. Canter v. Commonwealth*, 82 Va. App. 593, 602 (2024) (discussing interpretation of a waiver of common-law sovereign immunity). Hence, "its terms must be strictly construed." *Meador v. Va. Birth-Related Neurological Injury Comp. Program*, 44 Va. App. 149, 155 (2004) (quoting *Jan Paul Fruiterman & Assocs. v. Waziri*, 259 Va. 540, 544 (2000)). But where there is nothing to construe, the strict-construction rule does not apply. *See id.* (applying the rule of strict construction as an "interpretive tiebreaker" "[t]o the extent the[] opposite constructions of the statute can be viewed in rough equipoise"); *Rafalko v. Georgiadis*, 290 Va. 384, 422 (2015) (Mims, J., dissenting) ("Text that has a plain meaning needs no judicial construction."). And, as here, where the General Assembly has expressly provided that the statute at issue "shall be liberally construed," Code § 15.2-5431.1, we must heed its directive. *See Shoemaker v. Funkhouser*, 299 Va. 471, 484 n.6 (2021).

Nevertheless, "only those parts of the common law directly altered by the statute are deemed to be changed." *Couplin*, 270 Va. at 136. Moreover,

> [t]he common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

*Id.* (quoting *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988) (citations omitted)).

Here, the statutory text plainly immunizes any "member of any authority or officer of any governing body of a locality creating such authority, or person or persons acting in their behalf" from "*any* personal liability by reason of his carrying out any of the powers expressly given in this chapter," while they are "acting within the scope of their authority." Code § 15.2-5431.36 (emphasis added). For an authority created pursuant to the WSAA, the General Assembly has therefore altered the common-law rules pertaining to the sovereign immunity of government employees for certain individuals tasked with "carrying out any of the powers expressly given" in the WSAA "while acting within the scope of their authority." *Id.* By using the phrase "any personal liability," the General Assembly has granted those employees absolute personal immunity from suit. *Id.*; *cf. Couplin*, 270 Va. at 135 ("Without question, the General Assembly knows how to grant immunity to MWAA employees, as it clearly did in the second sentence of subsection B, for torts committed in the conduct of a proprietary function."). To the extent that the phrases "while acting within the scope of their authority" and "by reason of his carrying out any of the powers expressly given" are ambiguous, we must construe these provisions liberally. Code § 15.2-5431.1; *Shoemaker*, 299 Va. at 484 n.6.

In accordance with the liberal construction we must give the WSAA, we reject the argument that Larrowe, an RVBA board member, was acting outside the scope of his authority when he engaged in the alleged actions directed at Smith, the president and CEO of RVBA. The dispute between Larrowe and Smith arose because RVBA sought a "management fee" from

Botetourt County for the provision of broadband service. The alleged statements attributed to Larrowe in the complaint—including the internet post—related to Smith's management of RVBA and that fee dispute with Botetourt County. Smith's complaint specifically alleged that "*Botetourt County*, through the statements of actions of Mr. Larrowe, consistently criticized RVBA." But it also specifically averred that Larrowe's "membership to the board was due to his role as County Administrator, the lead executive employee of Botetourt County." Although we would never encourage Larrowe's actions, his allegedly tortious conduct occurred while Larrowe was conducting the business of the RVBA board, pursuant to his dual role as County Administrator of Botetourt County and board member of RVBA.

RVBA is authorized to manage its projects and, in accordance with said projects, assess certain fees. *See* Code § 15.2-5431.11(6), (9). An authority can only act through its board members, who are appointed by the governing bodies of the member localities. *See* Code § 15.2-5431.10(A), (B). As was done by RVBA, the board members of an authority may appoint "a chief administrative or executive officer who shall serve at the pleasure of the board members" and "shall execute and enforce the orders and resolutions adopted by the board members and perform such duties as may be delegated to him by the board members." Code § 15.2-5431.10(D).

It therefore strains reason to infer that Larrowe was acting in a non-immune capacity when he engaged in the alleged actions that stemmed from the fee dispute between RVBA and Botetourt County. The issues touched upon by Larrowe's actions and conduct were germane to the work that RVBA, through its board members—including Larrowe—and appointed CEO—Smith—was expressly granted authority to conduct. *See* Code § 15.2-5431.36 (granting immunity for acts undertaken "by reason of his carrying out of any of the powers expressly given in this chapter"). And the issue was especially relevant to Larrowe's position as a board member

- 12 -

of RVBA *appointed by Botetourt County* to represent the interests of the county. Moreover, the complaint alleges actions taken by an RVBA board member against a person who served at his pleasure, and there is no indication that any of the charged conduct related to a subject matter entirely outside the scope of RVBA's expressly granted powers.[7] Hence, we cannot accept Smith's strained inference that Larrowe was acting outside the scope of his authority as a board member of RVBA. *Patterson*, 301 Va. at 197. Since we find the inference factually unsupported, we conclude that his conduct was undertaken by virtue of his membership on the board of RVBA *through* his role as the County Administrator of Botetourt County.[8]

As a result, Larrowe could not be subject to "any personal liability by reason of his carrying out of any of the powers expressly" vested in him and RVBA by the WSAA. Code § 15.2-5431.36. The fact that Larrowe used charged and contentious language in his discussions with Smith and his fellow board members is unfortunate, but the language of Code § 15.2-5431.36 immunizing Larrowe cuts sharply against Smith's assertion that Larrowe's conduct was ultra vires. Therefore, Larrowe was entitled to immunity for his conduct under the WSAA, preventing Smith's claims from proceeding against him.[9]

---

[7] The allegations in the complaint narrate the breakdown of a professional relationship between Larrowe and Smith, which began with the imposition of a fee and lasted for several years thereafter, ultimately culminating in Smith's resignation. Significantly, there is no allegation that Larrowe engaged in any criminal conduct or physical violence toward Smith while the relationship was deteriorating. And the accusations that Smith acted criminally arose from the fee dispute and were related to Smith's conduct as president and CEO of RVBA.

[8] We acknowledge that Smith alleged that Larrowe's actions "were taken far beyond any line of reason or call of duty he may have possessed." However, "we discount th[is] broadly worded 'conclusion[] of law'" and instead rely on the specific factual allegations in the complaint, gleaning inferences solely from those facts. *Patterson*, 301 Va. at 198 (quoting *Baker*, 299 Va. at 641).

[9] By affirming the circuit court's judgment on these grounds, we need not determine whether the circuit court erred by sustaining Larrowe's demurrer, as we resolve this matter on the "best and narrowest grounds available." *Harris v. Wash. & Lee Univ.*, 82 Va. App. 175, 205 n.15 (2024).

III. CONCLUSION

In conclusion, even viewing Larrowe's actions in the light most favorable to Smith, we hold that Larrowe was acting within the scope of his authority as a board member of RVBA when he engaged in the allegedly tortious conduct. Thus, Smith's own pleadings establish that the immunity provided in Code § 15.2-5431.36 bars his suit against Larrowe. Moreover, "[t]he legislature functions under no grant of power. It is the supreme law making body of the Commonwealth." *Febio v. Cnty. Sch. Bd. of Fairfax Cnty.*, 199 Va. 511, 512-13 (1957). Hence, it is up to the General Assembly to remove or limit the immunization of RVBA board members under Code § 15.2-5431.36. We, on the other hand, must affirm the circuit court's judgment.

*Affirmed.*