COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Humphreys, Beales and Huff
Argued at Chesapeake, Virginia

BRUCE M. MAYER

v.      Record No. 0724-13-1

LINDA CORSO-MAYER

OPINION BY
JUDGE RANDOLPH A. BEALES
JANUARY 14, 2014

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

   Laura Murdoch Thornberry (Bruce M. Mayer, *pro se*, on briefs), for
   appellant.

   Scott B. Konikoff for appellee.


      Bruce M. Mayer (father) appeals the trial court's order directing him to pay continuing

child support to Linda Corso-Mayer (mother) under Code § 20-124.2(C).  Father argues that the

trial court lacked subject matter jurisdiction to award continuing child support to mother, that

mother lacked standing to petition for continuing child support, and that the evidence did not

support a finding that continuing child support was warranted.[1]  Father also challenges the trial

court's decision to order father to pay 75% of mother's fees and costs (including her attorneys'

---

      [1] In addition, father argues that the trial judge should have recused himself because he
previously "presided over the contentious divorce of the parties" and that the trial judge then
"was completely biased and unfair" at the evidentiary hearing on mother's petition for
continuing child support.  However, Rule 5A:18 bars appellate consideration of these arguments
because they were not preserved in the trial court.  See Ohree v. Commonwealth, 26 Va. App.
299, 308, 494 S.E.2d 484, 488 (1998).  Father never moved the trial judge to recuse himself from
considering the continuing child support matter.  Furthermore, father never objected on the basis
of judicial bias at the evidentiary hearing on the continuing child support matter or in the written
objections to the trial court's final order directing father to pay continuing child support for his
daughter.  Moreover, father "does not argue that we should invoke the 'good cause' or 'ends of
justice' exceptions to Rule 5A:18, and we decline to do so *sua sponte*."  Hampton Inn &
Selective Ins. Co. of America v. King, 58 Va. App. 286, 301, 708 S.E.2d 450, 457 (2011).

fees, deposition costs, and filing fees) that arose from continuing child support litigation. For the following reasons, we affirm the trial court's order directing the payment of continuing child support to mother. However, we reverse and vacate the award of attorneys' fees and costs to mother.

## I. BACKGROUND

"On appeal, we view the evidence in the light most favorable to [mother], the party prevailing below," Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008), and we grant to mother "all reasonable inferences fairly deducible" from the evidence, Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). The parties married in 1981 and were divorced by a final decree that the trial court entered on September 24, 2010. The parties' youngest child (daughter) was born on January 8, 1994 and, therefore, daughter was still a minor child when the parties divorced. Mother was granted sole custody of daughter. It is undisputed that daughter has been diagnosed with several conditions and disorders. Dr. Elena Flagg, an expert in rheumatology, diagnosed daughter with fibromyalgia, which Dr. Flagg testified is a chronic syndrome that is "characterized by widespread pain along the muscles." Dr. Alfonso Lopez-Condona, an expert in childhood psychiatry, testified that he diagnosed daughter with "Tourette's disorder, obsessive compulsive disorder, mood disorder NOS [not otherwise specified], and attention deficit hyperactivity disorder."

Pursuant to the final divorce decree, which incorporated the parties' property settlement agreement, father was ordered to pay $900 in monthly child support for daughter until daughter "reaches the age of 18 years unless she is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until the child reaches the age of 19 or graduates from high school, whichever first occurs." This provision of the final decree simply recites a portion of Code § 20-124.2(C). Language

- 2 -

reflecting a different portion of Code § 20-124.2(C) that is pertinent to this appeal also appears in the parties' final divorce decree.[2]

On May 10, 2012, mother filed a petition in the trial court seeking the payment of continuing child support by father.[3] Father moved to dismiss mother's petition, contending that the trial court lacked subject matter jurisdiction to consider mother's petition and that mother lacked standing to petition for continuing child support. Essentially, father asserted that mother's May 10, 2012 petition for continuing child support was untimely filed. Father alleged that daughter had already turned the age of 18 on January 8, 2012 and had also earned her general equivalency degree (GED) on April 19, 2012 before mother filed her petition. Thus, father contended that his responsibility to pay child support under the final divorce decree had already ended when mother filed the May 10, 2012 petition for continuing child support.

In support of father's motion to dismiss, father's counsel asserted at the January 25, 2013 evidentiary hearing in the trial court:

> So I would propose to you that no further obligation was in effect
> starting the 1st of May of 2012. However, [mother] didn't advise

---

[2] Specifically, the final decree includes language from Code § 20-124.2(C) stating that the trial court "may also order the continuation of support for any child over the age of 18 who is (i) severely and permanently mentally or physically disabled, (ii) unable to live independently and support himself, and (iii) resides in the home of the parent seeking or receiving child support." The trial court's authority to order child support under this statutory provision arose from the Code and was not dependent on the terms of the parties' property settlement agreement. Indeed, it is well established that "the parties may not, by agreement, prevent the court from exercising its power to change, modify, or enforce its decree concerning the custody and maintenance of minor children." Shoup v. Shoup, 37 Va. App. 240, 250, 556 S.E.2d 783, 788 (2001) (en banc); see also Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994) (holding that "parents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support").

[3] A *pendente lite* hearing was held in the trial court on November 16, 2012, and the trial court entered a written order granting mother *pendente lite* relief on December 13, 2012. In the December 13, 2012 *pendente lite* order, the trial court found that mother's evidence satisfied the required elements in Code § 20-124.2(C) for continuing child support, directed father to continue paying monthly child support of $900, and also found that father owed $1,800 in child support arrearages as of October 31, 2012.

the father that [daughter] had completed high school at that point in time so he kept on making payments. The mother, however, would have had to petition the Court for a continuation of child support before [daughter] turned 18 if she had wanted to have a continuation of child support. That is when the Court had statutory authority to order a continuation of child support, during the minority of the child. And so our position is that even if you use the April 2012 GED date, the mother was too late when she filed her petition in May of 2012.

However, the trial court denied father's motion to dismiss the petition – finding, *inter alia*, that Code § 20-124.2(C) "as set forth by the General Assembly intended for cases like this where . . . the Court can revisit [child support] and make an award accordingly if it finds that those necessitous circumstances exist."

At the evidentiary hearing, Dr. Flagg (who was received as *mother's* expert in rheumatology) testified that daughter's fibromyalgia causes her great pain, especially when it "flares up" due to stress, infection, physical activity, and prolonged periods of sitting or standing. Dr. Flagg added that the combination of the many medications that daughter has been prescribed can cause fatigue, dizziness, and disorientation. Dr. Flagg opined that, considering the symptoms of daughter's fibromyalgia and how they interact with daughter's psychiatric disorders, it would be "very difficult" for daughter to hold a full-time or even part-time job and to live independently. In Dr. Flagg's opinion, daughter currently could not be expected to "maintain an apartment," "maintain bills," "cook for herself," or supply some essentials of her own "self care."

Dr. Lopez (who was received as *father's* expert in childhood psychiatry) testified that he has prescribed medications for most of daughter's psychiatric disorders. According to Dr. Lopez, daughter's Tourette's disorder in particular causes daughter "to have these vocal tics" that tend to increase in magnitude when she is under stress. Dr. Lopez testified that he had observed a recent "exacerbation of the tics" from daughter. Dr. Lopez further testified that

- 4 -

daughter was jumping up and down, moving her hands erratically, and screaming during an appointment about two weeks before the evidentiary hearing. In Dr. Lopez's opinion, daughter could perform standard activities of daily living (such as taking a shower, brushing her hair, and dressing herself) and also could hold a job – "with help and support." However, Dr. Lopez acknowledged that living on her own and obtaining full-time employment would be stressors for daughter.

Other than babysitting five hours per week, daughter's testimony revealed almost no employment history.[4] She testified that she worked for three days as a ride operator at Busch Gardens – but had to quit that job because she could not stand for an eight-hour shift due to her fibromyalgia and her employer would not permit her to sit on a stool. According to daughter's testimony, the pain caused by her fibromyalgia limits her ability to perform many activities, which is further limited by her other disorders. Daughter testified that she has difficulty cleaning the house and also has difficulty unloading the dishwasher because the tics caused by her Tourette's disorder cause her to drop dishes.

Daughter acknowledged that she had earned her GED, obtained a driver's license, and enrolled at a local community college. In her first semester at the community college, she dropped out of one class, failed another, and passed the remaining class (testifying that she received an "A" in that class because the instructor permitted her to do extra credit work). Due to her disorders, daughter testified that she had great difficulty sitting through class sessions and that she was not even able to record lectures because her obsessive compulsive disorder caused her to move the recording device constantly. Daughter testified that she often drove herself to

---

[4] Daughter testified that she works one hour per day on weekday mornings, earning at most $50 per week, babysitting two children for a family in her neighborhood before those children go to school. According to daughter as well as the children's mother (who testified as a witness for father), daughter packs the children's lunches, helps the children pack their bags, and ensures that the children get on the school bus safely. The trial court found that daughter is merely "a body there," adding, "I don't really consider that anything."

class during her first semester at the community college, but that she needed mother to drive her home on at least three occasions due to anxiety or a flare-up of her Tourette's disorder. Daughter's second semester began three weeks before the evidentiary hearing in the trial court, and daughter testified that she no longer drove herself to class (but was instead driven there by her boyfriend) because of worsened pain attributable to fibromyalgia and a worsening of her tics caused by stress.

Mother testified that she is daughter's sole caretaker and that father does not provide any in-person support for the care of daughter. Daughter and mother both referenced an episode that occurred about a year or two before the evidentiary hearing, when daughter suffered severe tics while with father at a movie theater. On direct examination, mother testified:

> It was more than a tic. It almost looked like a grand mal seizure. I mean, her tics were out of control. They had to let everybody out of the theater. They had to have management come in. And Bruce said, "You need to come in here and help me. I can't do this on my own." And he and I physically carried her out and put her in the car. He didn't say a word to me and just left the scene.

When asked on cross-examination whether she had observed other tics of a similar level of severity from daughter at other times, mother testified:

> Yes. Last summer in the backyard she was throwing furniture, patio furniture around. And she was . . . throwing things in my room and rolling around the floor, and rolled off the bed as a matter of fact.

Furthermore, both daughter and mother testified that daughter's psychiatric conditions have caused her to harm herself. Daughter testified, "About two years ago I actually had to be put in the hospital because I was punching myself in the head." Daughter also testified that she had previously "cut myself," adding, "I still have the scars on my arms." Mother testified that daughter "was put in the hospital two years ago for cutting, banging her head against concrete walls." Mother also testified that daughter still causes "self injury" by "grab[bing] her arm like

- 6 -

in a real tight position and pinch[ing] it" and apparently hitting her head with her hand in a manner that mother demonstrated to the trial court.

Without objection by father's counsel, mother opined that daughter cannot live by herself and is unable to care for herself. Mother testified that daughter cannot be relied on to clean herself, to cook, to shop for provisions adequately, to take herself to her doctor's appointments, to handle her finances and manage money, and to have adequate "schooling [and] organizational skills." Although mother acknowledged on cross-examination that daughter can do some of these things at times, mother also testified that "everything waxes and wanes." Mother explained that daughter's conditions lead to much unpredictability of how well daughter can care for herself from one month to the next.

At the conclusion of all the evidence, the trial court found that an order of continuing child support was appropriate because the required elements of Code § 20-124.2(C) had been satisfied. The trial court found:

> [S]he wants to be independent, but the Court finds that she's not able to support herself independently based upon the overall testimony. She wants to do things, but she has issues.

The trial court emphasized that it based its finding on "the totality of the conditions that [daughter] has," also noting that "any one of these standing alone would not in and of itself" constitute a severe and permanent disability for purposes of Code § 20-124.2(C). Furthermore, in addition to ordering continuing child support, the trial court also directed father to pay 75% of mother's attorney's fees and related costs – adopting the closing argument of mother's counsel on this issue.

II. ANALYSIS

A. ORDER OF CONTINUING CHILD SUPPORT

Father appeals the trial court's finding that continuing child support for daughter was authorized by Code § 20-124.2(C). That statute states, in pertinent part:

> The court may order that support be paid for any child of the parties. The court shall also order that support will continue to be paid for any child over the age of 18 who is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of 19 or graduates from high school, whichever first occurs. *The court may also order the continuation of support for any child over the age of 18 who is (i) severely and permanently mentally or physically disabled, (ii) unable to live independently and support himself, and (iii) resides in the home of the parent seeking or receiving child support.*

Code § 20-124.2(C) (emphasis added); see Crabtree v. Crabtree, 17 Va. App. 81, 87, 435 S.E.2d 883, 887 (1993) ("A circuit court that transfers any matters to the juvenile and domestic relations district court court pursuant to Code § 20-79(c) retains the power, in its discretion, to exercise its continuing jurisdiction over those matters.").

On appeal, father raises three arguments challenging the trial court's order directing the payment of continuing child support – (1) that the trial court lacked subject matter jurisdiction to order continuing child support, (2) that mother lacked standing to petition for continuing child support, and (3) that the evidence failed to satisfy the elements for continuing child support under Code § 20-124.2(C).

1. TRIAL COURT'S SUBJECT MATTER JURISDICTION

"The term jurisdiction is 'a word of many, too many, meanings.'" Smith v. Commonwealth, 281 Va. 464, 467, 706 S.E.2d 889, 891 (2011) (quoting Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010)); see Hitt Constr. v. Pratt, 53 Va. App. 422, 425, 672 S.E.2d 904, 905 (2009).

- 8 -

"A court may lack the requisite 'jurisdiction' to proceed to an adjudication on the merits for a variety of reasons.

The term jurisdiction embraces several concepts including *subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies*; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a res; and 'the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.' Farant Inv. Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924)."

Hitt, 53 Va. App. at 426, 672 S.E.2d at 906 (quoting Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008)).  A challenge to a trial court's subject matter jurisdiction is a question of law that is reviewed *de novo* on appeal.  Glasser & Glasser, PLC v. Jack Bays, Inc., 285 Va. 358, 369, 741 S.E.2d 599, 604 (2013).

Code § 20-124.2(C) expressly grants the appropriate circuit court with the authority to "order the continuation of support for any child over the age of 18 who is (i) severely and permanently mentally or physically disabled, (ii) unable to live independently and support himself, and (iii) resides in the home of the parent seeking or receiving child support."  The trial court here clearly had subject matter jurisdiction to consider mother's petition for continuing child support.  Whether mother actually satisfied the evidentiary elements of Code § 20-124.2(C) with respect to daughter is a different question entirely – one that simply does not implicate the trial court's subject matter jurisdiction to adjudicate *the class of case* at issue here.[5]  See Porter, 276 Va. at 228, 661 S.E.2d at 426.

---

[5] Father's reliance on the Supreme Court of Virginia's decisions in Eaton v. Eaton, 215 Va. 824, 213 S.E.2d 789 (1975), and Cutshaw v. Cutshaw, 220 Va. 638, 261 S.E.2d 52 (1979), is misplaced.  Those decisions pre-date the enactment of Code § 20-124.2(C) in 1994.

2. MOTHER'S STANDING TO BRING THE PETITION

"Standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action." Andrews v. American Health & Life Ins. Co., 236 Va. 221, 226, 372 S.E.2d 399, 402 (1988) (citing Allen v. Wright, 468 U.S. 737, 750-51 (1984)).

> Thus, in evaluating whether a party has standing, we are "not concerned with whether or not a party will ultimately prevail on the legal merits of an issue." Rather, the only question is "the ability of a party to seek redress through the courts in the first place by demonstrating sufficient connection to, and actual or potential harm from, the law or action challenged."

Reston Hosp. Ctr., LLC v. Remley, 59 Va. App. 96, 105, 717 S.E.2d 417, 422 (2011) (quoting Biddison v. Marine Res. Comm'n, 54 Va. App. 521, 527, 680 S.E.2d 343, 346 (2009)); see also Allen, 468 U.S. at 750-51 ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). The issue of whether a party has standing to raise a claim in the appropriate court "involves a purely legal question of statutory interpretation that we review *de novo*." Antisdel v. Ashby, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010).

Father argues that mother lacked standing to raise her petition for continuing child support on May 10, 2012 because daughter had already turned the age of 18 and had already received her GED before the date mother filed the petition. Thus, father contends that his responsibility to pay child support for daughter had ceased by the time mother filed her petition for continuing child support in the trial court because daughter was no longer a minor child but instead was an "emancipated adult." We disagree.

We must first consider, of course, the plain language of Code § 20-124.2(C) because "we are bound by the plain meaning" of that statute and must "apply the statute as written." 1924 Leonard Rd., L.L.C. v. Van Roekel, 272 Va. 543, 553, 636 S.E.2d 378, 384

- 10 -

(2006). Code § 20-124.2(C) expressly states that the trial court "may also order the continuation of support for *any child over the age of 18*" provided that certain evidentiary elements are satisfied. (Emphasis added). Thus, a "child" under Code § 20-124.2(C) may be "over the age of 18" years. The plain language of Code § 20-124.2(C) certainly is clear and unambiguous on this issue.[6]

"We have a duty to construe the law as it is written. In doing so, we assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words." Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003) (internal quotation marks and citations omitted). In this case, it is undisputed that mother was awarded sole custody of daughter in the final divorce decree and that daughter continued to reside with mother, who was responsible for daughter's care. Furthermore, as father's counsel indicated at the evidentiary hearing, mother was still receiving child support from father when mother filed her petition for continuing child support on May 10, 2012. Mother filed this petition in order to continue to exercise her "'right to act as a conduit for the payments of support to the child.'" Nkopchieu v. Minlend, 59 Va. App. 299, 305, 718 S.E.2d 470, 474 (2011) (quoting Commonwealth *ex rel.* Gray v. Johnson, 7 Va. App. 614, 622, 376 S.E.2d 787, 791 (1989)).

If the mother of a child who *may* have a severe and permanent disability (that prevents the child from living independently and supporting herself) cannot seek continuing support on behalf of the child, then who *would* have standing to do so? To hold that the answer to this question is nobody (as father urges us to conclude, given his argument that daughter is an

---

[6] Furthermore, mother did not lack standing simply because she filed her petition for continuing child support after daughter received her GED. Code § 20-124.2(C) "describes two separate scenarios under which child support may be continued." Mullin v. Mullin, 45 Va. App. 289, 301, 610 S.E.2d 331, 336 (2005). Daughter's GED would have been relevant, if at all, for the first scenario. However, it is clear from the record that mother's petition for continuing child support related to the *second* scenario described in Code § 20-124.2(C). The educational status of the "child over the age of 18" is not a consideration for this second scenario described in Code § 20-124.2(C).

- 11 -

"emancipated adult") would require this Court to contradict the plain language of Code § 20-124.2(C) – which this Court cannot and should not do. Even though daughter had already turned the age of 18 (and had already received her GED) when mother filed the petition for continuing child support, the plain language of Code § 20-124.2(C) permitted daughter still to be recognized as a "child over the age of 18" as long as the evidentiary elements of the statute were satisfied. Certainly, mother had a "sufficient interest in the subject matter of the case" to confer upon her standing to raise the petition for continuing child support. Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984).

3. EVIDENTIARY BASIS SUPPORTING THE CONTINUING CHILD SUPPORT ORDER

Father also argues that the trial court's order of continuing child support was not supported by sufficient evidence.

> [W]hen a trial court hears evidence at an *ore tenus* hearing, its factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them. Wheeler v. Wheeler, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004); see also Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003) (noting that, on appeal, the trial court's ruling is "peculiarly entitled to respect for [it] saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record" (internal quotations omitted)). Moreover, there is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Brown v. Spotsylvania Dept. of Social Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004).

Mullin v. Mullin, 45 Va. App. 289, 299-300, 610 S.E.2d 331, 336 (2005). Furthermore, given that we must view the evidence in the light most favorable to mother (as the party prevailing below), we also must "discard the evidence of [father] which conflicts, either directly or inferentially, with the evidence presented by [mother] at trial." Petry v. Petry, 41 Va. App. 782, 785-86, 589 S.E.2d 458, 460 (2003).

In the trial court, mother assumed the burden as the moving party of satisfying the elements for an order of continuing child support under Code § 20-124.2(C). Germek v. Germek, 34 Va. App. 1, 8, 537 S.E.2d 596, 600 (2000). On appeal, father concedes that daughter resides with mother. Father also does not dispute that daughter has permanent physical and mental disabilities – given the testimony of both Dr. Flagg and Dr. Lopez that the conditions they have diagnosed for daughter are chronic and recurring. Thus, our review is limited to the remaining elements set forth in Code § 20-124.2(C) – i.e., whether daughter is "severely" mentally or physically disabled, and is "unable to live independently and support" herself.

When applying the elements of Code § 20-124.2(C), courts must give the words of this statute their common, ordinary, and accepted meaning. Germek, 34 Va. App. at 8, 537 S.E.2d at 600. The word "severe" is commonly defined, in pertinent part, as "inflicting physical discomfort or hardship," "inflicting pain or distress," and "of a great degree or an undesirable or harmful extent." Webster's Third New International Dictionary 2081 (1981). Viewing the evidence in the light most favorable to mother, as we must since she was the prevailing party below, the trial court's finding that daughter is severely mentally or physically disabled was not plainly wrong or without evidence to support it. See Code § 8.01-680. As the trial court found, daughter has been diagnosed with both a painful physical condition and several psychological conditions that cause very erratic and sometimes self-destructive behavior. Weighing the evidence, the trial court noted reasonably that any one of daughter's many conditions, *standing alone*, might not cause a severe and permanent disability – but found that *the totality* of these conditions caused a severe disability. This finding was supported by credible evidence.

Clearly, Dr. Flagg described daughter's fibromyalgia as very painful and a condition that limits what she can do, and this expert testimony was corroborated by daughter's own account of her difficulties doing basic activities such as lifting her arms or standing for periods of time. The

- 13 -

trial court found that daughter's fibromyalgia must also be viewed in conjunction with the many psychological disorders that Dr. Lopez described – which, *inter alia*, can cause very noticeable and disruptive tics, significant anxiety, lapses in concentration, and self-destructive behavior. The trial court, acting as factfinder, was entitled to give significant weight to mother's testimony that daughter's tics can be so severe that mother once observed what looked to her like a grand mal seizure. Thus, sufficient evidence in the record, viewed in its totality, supports the trial court's finding that daughter is severely mentally or physically disabled for purposes of Code § 20-124.2(C).

In Germek, 34 Va. App. at 8, 537 S.E.2d at 600, this Court held that "an award of continuing support under [Code § 20-124.2(C)] requires a finding that the statutory elements are causally linked, i.e., that the child's severe and permanent disability renders her unable to live independently and support herself." The trial court here made a finding of the necessary causal connection during its thorough bench ruling, and this finding was supported by evidence in the record on appeal. Specifically, the trial court credited and gave significant weight to Dr. Flagg's testimony that it would be "very difficult" for daughter to hold a job and live independently – finding based on this testimony that daughter clearly "can't hold a regular job" and "[a]s a matter of fact she can't even hold a partial job." The testimony of daughter's own mother and sole caretaker also supports the trial court's finding on this point. Mother testified, without objection, that daughter simply could not live alone and could not keep a job at the time of the evidentiary hearing due to daughter's many conditions.

Father argues that the trial court should have accepted the testimony of Dr. Lopez – father's own expert witness – that daughter could hold a full-time job provided she received "help and support." However, to the extent that Dr. Lopez's opinion conflicted with Dr. Flagg's opinion, the trial court was entitled to accept Dr. Flagg's testimony and accord Dr. Lopez's

testimony less weight. On appeal, this Court does not assess the credibility of the witnesses or reweigh the evidence. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc). Furthermore, we disagree with father's reliance on our decision in Germek and his view that daughter's enrollment at a local community college contradicts the testimony that she cannot work. In Germek, the parties' daughter "*chose* to attend college full-time, and any inability to work more than seven hours per week arose from her decision to attend college *rather* than her physical disability." Germek, 34 Va. App. at 12, 537 S.E.2d at 602 (emphasis added). The trial judge in Germek even found that the daughter was able to obtain gainful employment. Id. By contrast, the trial court here found that daughter enrolled at the community college because "she want[s] to achieve" and also found that daughter "really wants to get from under her mother if she could" and she has an "ultimate purpose of trying to be self sufficient" and "be independent" – but ultimately concluded that "she's not able to support herself independently based upon the overall testimony." Accordingly, Germek is readily distinguishable based on its very different facts.

We also observe that, while the first prong of Code § 20-124.2(C) requires a permanent (and severe) disability, the plain language of the statute does *not* require a showing that the child over the age of 18 is *permanently* "unable to live independently and support" herself, the second prong of the statute. Thus, the trial court was only required under Code § 20-124.2(C) to assess the circumstances affecting the second prong of the statute as they existed at the time of the evidentiary hearing – not prospectively. Based on the plain language of Code § 20-124.2(C), and in light of the deferential standard of review on appeal, we cannot say that the trial court's decision to order continuing child support payments from father was plainly wrong or without evidence to support it. See Code § 8.01-680.

B. AWARD OF ATTORNEY'S FEES AND COSTS

Finally, father argues that the trial court's award of attorney's fees and costs to mother was unreasonable and was not supported by the record. An award of attorney's fees and costs "is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987); see Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001) ("The key to a proper award of counsel fees is reasonableness under all the circumstances.").

In this case, the trial court issued its bench ruling in which it found that payment of continuing child support was appropriate under Code § 20-124.2(C) – and then summarily directed father to pay 75% of the attorney's fees and related costs that mother incurred while pursuing her continuing child support claim. The trial court never identified any basis for the award of attorney's fees and costs to mother. It simply explained, "That's the way it's going to be broken down." The trial court noted that it decided to "adopt the arguments of [mother's counsel] in her closing argument to the Court as reasons for the Court's decision as well."

We have carefully reviewed the transcript of the closing argument presented by mother's counsel.[7] The thrust of the argument presented by mother's counsel was that father should have simply agreed to settle the matter instead of exercising his right to defend against mother's claim through the date of the evidentiary hearing. Assuming that mother would prevail on her claim for continued child support under Code § 20-124.2(C), mother's counsel asserted during closing argument that mother also should be compensated for the attorney's fees and related costs that mother incurred while pursuing her own claim. In short, mother's counsel advanced what

---

[7] Concerning an award of attorney's fees and costs, mother's counsel's main points raised during closing argument were (1) that mother prevailed at the *pendente lite* hearing, (2) that father declined to "settle this and avoid the costs of the litigation," (3) that mother incurred expert witness fees at Dr. Flagg's deposition and at the evidentiary hearing, and (4) that, following the evidence taken at the hearing, father "still ha[d] not agreed that the evidence is overwhelming that we've met this burden" of Code § 20-124.2(C).

- 16 -

amounted to a "loser pays" rationale for an award of attorney's fees and costs.  See Servicios

Comerciales Andinos, S.A. v. GE Del Caribe, 145 F.3d 463, 481 n.9 (1st Cir. 1998) ("[A] 'loser

pays' rule could be conceived of as adding an award of attorney's fees to the recovery provided

by the underlying cause of action.").

However, Virginia law consistently adheres to the "American rule," which holds that,

"ordinarily, attorneys' fees are not recoverable by a prevailing litigant in the absence of a

specific contractual or statutory provision to the contrary."  Lannon v. Lee Conner Realty Corp.,

238 Va. 590, 594, 385 S.E.2d 380, 383 (1989); see also Buckhannon Bd. & Care Home v. W.

Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001) ("In the United States, parties are

ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to

collect from the loser."); Jeroski v. Fed. Mine Safety & Health Review Comm'n, 697 F.3d 651,

654 (7th Cir. 2012) (explaining that the "American rule" is "distinct from England's 'loser pays'

rule").

"In Virginia, Code §§ 20-79(b) and [former] 20-99(5)[8] provide the statutory basis for the

broad discretionary authority circuit courts have to award attorney's fees and other costs as the

equities of a divorce case and its ancillary proceedings may require."  Tyszcenko v. Donatelli, 53

Va. App. 209, 222, 670 S.E.2d 49, 56 (2008).  "This discretionary authority also extends to

---

[8] Code § 20-79(b) states,

> In any suit for divorce, the court in which the suit is instituted or
> pending, when either party to the proceedings so requests, shall
> provide in its decree for the maintenance, support, care or custody
> of the child or children in accordance with Chapter 6.1 (§ 20-124.1
> et seq.), support and maintenance for the spouse, if the same be
> sought, and counsel fees and other costs, if in the judgment of the
> court any or all of the foregoing should be so decreed.

Code § 20-99(5) used to state, "Costs may be awarded to either party as equity and justice may
require."  This language now appears verbatim in Code § 20-99(6) – given that the General
Assembly in 2012 added a new subsection to Code § 20-99, thereby redesignating former Code
§ 20-99(5) as the current Code § 20-99(6).

related post-divorce proceedings." Id. (citations omitted). Significantly, however, *there is no prevailing-party entitlement* to fees under Code §§ 20-79(b) and [former] 20-99(5)." Id. at 223, 670 S.E.2d at 57 (emphasis added). "Instead, the trial court, in the exercise of its discretion, may award attorney's fees and costs to 'either party as equity and justice may require.'" Id. (quoting what is currently Code § 20-99(6)). Therefore, after considering "the circumstances of the parties" and "the equities of the entire case," a trial court may exercise its discretion and issue an award of attorney's fees and costs that is reasonable "under all of the circumstances revealed by the record." Id. (internal quotation marks, alterations, and citations omitted).

Even viewing the evidence in the light most favorable to mother, as we must since she was the prevailing party below, the record does not reflect that the award of attorney's fees and costs to mother was premised on any of the circumstances authorizing an award under Code §§ 20-79(b) and 20-99(6) or the case law interpreting those statutes. Neither the trial court nor mother's counsel referenced any specific circumstances of the parties or equities of the entire case that justified an assessment of attorney's fees and costs against father. The record merely reflects (1) that mother brought a petition for continuing child support against father and (2) that father simply answered the petition and contested mother's claim in the trial court. Furthermore, there is no evidence that father – in his defense against mother's claim – delayed the litigation or otherwise frustrated the course of the proceedings. See, e.g., Northcutt v. Northcutt, 39 Va. App. 192, 200-01, 571 S.E.2d 912, 916 (2002) (affirming an award of attorney's fees where the trial judge found, "I'm fed up with this case and the delays that have been occasioned so unnecessarily, and some of the delays . . . have created a decrease in [the] value of the property of the marriage. This has been horrible.").

According to the Supreme Court, one of the ways in which an abuse of discretion can occur arises "'when an irrelevant or improper factor is considered and given significant weight'"

by the trial court.  Lawlor v. Commonwealth, 285 Va. 187, 213, 738 S.E.2d 847, 861 (2013) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).  An abuse of discretion of this variety occurred here.  The trial court's decision to assess attorney's fees and costs against father, based on the insufficient grounds argued by mother's counsel and adopted by the trial court, amounted to the type of "loser pays" rationale that has long been generally rejected in Virginia.  Accordingly, the trial court's award of attorney's fees and costs must be reversed because it was not reasonable "under all of the circumstances revealed by the record."  McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

## III. CONCLUSION

The trial court had subject matter jurisdiction to consider mother's claim for continuing child support under Code § 20-124.2(C) – which mother clearly had standing to raise.  Furthermore, credible evidence in the record supports the trial court's order directing father to pay continuing child support to mother on daughter's behalf.  However, there is not an adequate basis in the record for the trial court to assess attorney's fees and costs against father.  Accordingly, while we affirm the trial court's continuing child support order, we reverse and vacate its decision to direct father to pay 75% of mother's attorney's fees and costs in the circuit court arising from the continuing child support litigation.

Affirmed in part, reversed
and vacated in part.